UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT MACKLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17 CV 2198 RWS |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner of Operations, ) | |
| Social Security Administration ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

Robert Macklin brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's decision denying his application for disability insurance benefits. Because the Commissioner's decision is supported by substantial evidence on the record as a whole, I will affirm the Commissioner's decision.

## *BACKGROUND*

On March 28, 2014, Macklin filed an application for disability insurance benefits pursuant to Title II, 42 U.S.C. §§ 401 *et seq*. (Tr. 248). He alleged an initial onset date of June 30, 2013. (*Id.*). Macklin's application was denied on initial consideration. (Tr. 177). He requested a hearing before an Administrative

Law Judge (ALJ). Macklin, accompanied by counsel, attended the hearing on May 12, 2016. (Tr. 34). The ALJ issued a decision denying Macklin's application on June 29, 2016. (Tr. 16). On June 15, 2017, the Appeals Council denied Macklin's request for review. (Tr. 1).

Macklin filed the present appeal for judicial review, arguing that: 1) the ALJ's determination of Macklin's residual functional capacity was not supported by the medical evidence of record; 2) the ALJ did not properly weigh a finding of disability made by the Department of Veterans' Affairs (VA); and 3) the ALJ failed to properly evaluate the credibility of Macklin's testimony. (Doc. 15 at 6, 10, 11). In response, the Commissioner argues that the ALJ's RFC determination was properly formed, that he properly evaluated the VA's determination of disability, and that he properly evaluated plaintiff's credibility in light of the record as a whole. (Doc. 20 at 5, 11, 8).

*Administrative Record*

For evidentiary purposes, I have considered Macklin's Statement of Uncontroverted Material Facts (Doc. 16). The Commissioner generally objects to the admission of Macklin's facts on the grounds that they offer evidence outside the relevant time period in this appeal, which is the alleged onset date of June 30, 2013, though the date last insured of September 30, 2013. (Doc. 20, Ex. 1). Because I ultimately affirm the Commissioner's decision as supported by

2

substantial evidence, I have adopted Macklin's Statement. I also adopt the Commissioner's Statement of Additional Facts (Doc. 20, Ex. 2) as uncontroverted by Macklin. These statements provide a fair and accurate description of the relevant record before me. I will highlight specific facts as needed in addressing the parties' arguments.

*ALJ Decision*

The ALJ first found that Macklin met the insured-status requirements of the Social Security Act through September 30, 2013. (Tr. 18). He found that Macklin had not engaged in substantial gainful activity from his alleged onset date of June 30, 2013. (*Id.*). He also found that Macklin suffers from the following severe impairments: "hypertension, osteoarthritis, gastroesophageal reflux disease (GERD), post-traumatic stress disorder (PTSD), major depressive disorder and impulse control disorder, not otherwise specified." (*Id.*). The ALJ found Macklin's alcohol abuse to be non-severe. (Tr. 19). The ALJ found that this combination of severe impairments did not equate to one of the listings denominated in 20 CFR 404, Subpt. P, App. 1. (*Id.*).

After evaluating Macklin's claims, the medical opinion evidence, and the medical evidence of record, the ALJ determined that Macklin retained the residual functioning capacity (RFC) to perform the following tasks:

> [Lift]/carry 10 pounds frequently and 20 pounds occasionally, sit for about 6 hours of an 8-hour workday

3

and walk/stand for about 6 hours in an 8-hour workday, with normal breaks. The claimant can never climb ladders, ropes or scaffolds, but can occasionally climb ramps or stairs. He can occasionally balance, stoop, kneel, crouch and crawl. He can have occasional exposure to extreme cold, extreme heat, wetness, humidity, excessive noise, operational control of a motor vehicle and irritants such as fumes, odors, dust, gases and poorly ventilated areas. He can have no exposure to excessive vibration, unprotected heights and hazardous machinery. He can perform simple, routine tasks in a low-stress job, defined as having only occasional decision-making and only occasional changes in work setting. He can perform work with no production quota. He can perform work that requires only occasional interaction with the general public, co-workers and supervisors.

(Tr. 20).

Based on this RFC determination, the ALJ found that Macklin was no longer able to perform his past relevant work. (Tr. 25). The ALJ consulted a vocational expert (VE) to assess whether jobs within Macklin's RFC existed in significant numbers in the national economy. (Tr. 25-26). The VE identified the jobs of garment sorter, work ticket distributor, and checker 1; she further identified these jobs as light unskilled work within Macklin's RFC. Finally, the VE identified 217,500 garment sorter jobs, 297,050 work ticket distributor jobs, and 59,430 checker 1 jobs in the national economy. (Tr. 26). The ALJ therefore determined that plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*).

## *LEGAL STANDARD*

To be eligible for disability insurance benefits under the Social Security Act, Macklin must prove that he is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities. If the claimant's

5

impairment(s) is not severe, then she is not disabled.  The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled.  At the fourth step, the Commissioner establishes whether the claimant can perform her past relevant work.  If so, the claimant is not disabled.  Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  Determining whether there is substantial evidence requires scrutinizing analysis.  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to

draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ should not ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> [The] claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

*Id.* at 1322. When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). However, the ALJ retains the responsibility of developing a full and fair record in the non-

adversarial administrative proceeding. *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

*ANALYSIS*

*A. The ALJ's determination of plaintiff's RFC was supported by the medical evidence of record.*

Macklin cites *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), for the proposition that the determination of plaintiff's RFC is ultimately a medical question. As noted above, the record must therefore include some medical evidence that supports the RFC. *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (internal citation omitted).

However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Macklin argues that the ALJ "[cites absolutely no medical opinion evidence plaintiff was capable of lifting 20 pounds and/or being on his feet 6/8 hours, and he could sit 6/8 hours." (Doc. 15 at 8). This argument is belied by a plain reading of the opinion. The ALJ discusses the portion of the medical record used in formulating the physical component of plaintiff's RFC at length. (Tr. 21-22). In particular, the ALJ discusses the medical evidence provided by treating physicians at the VA:

> [Between January 2013 and April 2016,]… providers completed a range of tests/examinations, including an

>MRI of the right knee that showed probable mucoid degeneration in the after crucial ligament, with a questionable area of the medial meniscus along [its] interior [Tr. 357], an x-ray of the left knee that [showed] osteoarthritis and a small amount of joint effusion [Tr. 376], and an x-ray of the right knee that showed minimal osteoarthritis and patellar spurs [Tr. 377, 380]… specific physical/psychological examination findings were rather unremarkable, but did chronicle the claimant's complaints of knee pain, elevated blood pressure, depression and PTSD/anxiety. Treatment recommendations included referral to orthopedic surgery [Tr. 480], medication management, a period of physical therapy [Tr. 688], home exercise program, 2 of 3 injections in his knee [Tr. 436], gait training with a prescription for a cane [Tr. 445-446], right knee brace [Tr. 451], a knee elevator [Tr. 681], a blood pressure cuff [Tr. 685]… and other conservative treatments. The records reflect that he did not attend physical therapy… He described the knee pain as off and on [Tr. 729]… [he] reported that he did not do his home exercise program [Tr. 436]. The claimant had an orthopedic surgery consul, and they recommended injections, but no surgery was recommended [Tr. 482]… [He] was scheduled for psychiatric care, but did not show for multiple appointments [Tr. 502]. [His pain medications were] commonplace medications and the record does not establish that he was prescribed stronger pain medication or even requested it. The records reflect that the claimant had left knee arthroscopic surgery for a strained ACL [in 1996] [Tr. 635]; however, based on earnings records, the evidence does not support that this surgery had a long term adverse impact on his work activity [Tr. 254].

(Tr. 21). The ALJ also discussed the medical opinion of Sarwath Bhattacharya, M.D., who examined plaintiff in 2014:

>[Plaintiff] did not use an assistive device, but he did limp. [He] had no paravertebral muscle spasm or

9

> tenderness in his back. He was able to walk on his heels and toes. [He] was able to flex and touch his toes. He was able to squat down without any problem. He had no problem getting up and down [from] the exam table. His straight leg raising was within normal limits. He had a well-healed surgical [scar] on his left knee. He had dexterous movement of his fingers for gross and fine manipulation. His handgrips were 5/5. He had good range of movement of the upper and lower extremities. He had no effusion in his knees. He may have had mild crepitation in both of his knees, but his range of motion was within normal limits in his knees. He had good range of movement of all the extremities. Neurologically, there was no sensor loss. His deep tendon reflexes were equal and bilaterally and his toes were downgoing. Right knee x-ray showed trace patellofemoral spur formation, the left knee showed slight patellofemoral spur formation and slight medial femoral condylar spur formation [Tr. 359-367]. Dr. Bhattacharya's examination findings and medical opinions are given great weight because he had an opportunity to examine the claimant and his examination findings are consistent with the remainder of the treatment records.

(Tr. 22).

Macklin seems to be arguing that because the ALJ points to no direct quotation from a medical opinion discussing plaintiff's ability to lift 20 pounds or sit for 6 hours, the ALJ did not support the RFC with the medical evidence of record as a whole. This is precisely the "specific medical opinion" *Hensley* states is unnecessary. *Id.,* 829 F.3d at 932. Furthermore, although the ALJ does not specifically cite this in his opinion, the record of Dr. Bhattacharya's examination of Macklin includes several statements of plaintiff that go directly to supporting

this aspect of his RFC. During that June 2014 examination, a year after his alleged onset date, Macklin stated to Dr. Bhattacharya that he could walk four to five blocks with the assistance of his knee braces, that he could lift 50 pounds, and that he could climb a flight of stairs. (Tr. 360). The ALJ's assessment of Macklin's physical RFC is thus more conservative, in some respects, than what Macklin himself asserted he could still do.

In addressing the mental component of plaintiff's RFC, the ALJ relied on the VA records and on the medical opinion of Kirmach Natani, Ph.D., who conducted a psychological evaluation in June of 2014. (Tr. 22). The ALJ gave portions of Dr. Natani's opinion diagnosing Macklin's PTSD and depression great weight because they were consistent with the record as a whole. (*Id.*). To the extent the ALJ gave Dr. Natani's findings as to Macklin's concentration, persistence, or pace little weight, he did so because other evidence in the record supported the finding that Macklin was *more* limited in those respects than Dr. Natani diagnosed. (*Id.*). The ALJ likewise gave little weight to the opinion of non-examining physician Terry Dunn, Ph.D., who reviewed the medical evidence on the record at the request of the Commissioner, because the ALJ found that the record as a whole demonstrated *greater* limitations than those stated in Dr. Dunn's opinion. (Tr. 23).

The ALJ incorporated these limitations into his evaluation of Macklin's RFC. As noted above, the ALJ's RFC determination found that plaintiff "could

never climb ladders, ropes, or scaffolds… [nor] be exposed to excessive vibration, unprotected heights, or hazardous machinery… [and needed] simple, routine tasks in a low stress job with no production quota, with only occasional interaction with the general public, co-workers and supervisors." (Tr. 20). I therefore find that the ALJ properly considered the medical opinions of Macklin's VA providers, Dr. Bhattacharya, Dr. Natani, and Dr. Dunn in evaluating plaintiff's RFC.

*B. The ALJ properly considered the VA's evaluation of Macklin's disability.*

The VA's determination that a given person is disabled is not binding on an ALJ considering that person's claim for Social Security benefits. *Jenkins v. Chater*, 76 F.3d 231, 233 (8th Cir. 1996). However, the VA's determination is "entitled to some weight and must be considered in the ALJ's decision." *Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998) (internal citations omitted).

In this case, the VA determined that Macklin "had a 50% disability due to major depressive disorder, moderate, recurrent, 10% osteoarthritis in the right knee, 20% of the left knee with history of partial tear and 10% GERD… [as well as] 50% due to sleep apnea." (Tr. 23-24). The ALJ gave these ratings "no weight[,] because the determination as to whether a claimant is disabled is reserved to the Commissioner and the Agency is not bound by the decisions or ratings of disability from the VA..." (Tr. 24). This is the sole mention in the ALJ's decision of the weight given to the VA's determination. Macklin argues that the ALJ's

decision "does not even discuss this critical finding by the [VA]… [the ALJ] offers absolutely no rationale relative to the consultative evaluator for the VA's opinion [that] [Macklin] would have reduced social and occupational reliability, nor does it discuss what the ratings and their severity level in turn meant." (Doc. 15 at 10-11).

An ALJ need not explicitly address the components of another agency's disability evaluation when he or she fully considers the underlying evidence as part of his or her own evaluation. *Pelkey v. Barnhart*, 433 F.3d 575, 579-580 (8th Cir. 2006). As discussed previously, the ALJ fully considered the medical evidence of record. This included the medical records provided by the VA's treating physicians, upon which the VA's own determination was based. The ALJ's responsibility to consider the VA's findings was substantively discharged, even if he did not formally discuss each rating in detail. *Pelkey v. Barnhart* requires no more.

*C. The ALJ properly evaluated Macklin's credibility in light of the record as a whole.*

As noted above, the ALJ must consider Macklin's testimony, but may disbelieve it when it is not consistent with the record as a whole. *Basinger*, 725 F.2d at 1169; *see also Battles*, 902 F.2d at 660, *and Polaski*, 739 F.2d at 1322 (enumerating factors for the ALJ to consider in evaluating plaintiff's testimony). When the ALJ explicitly disbelieves the claimant's testimony and gives good

reasons for such disbelief, a reviewing court will typically defer to the ALJ's finding. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).

Macklin argues that the ALJ did not properly evaluate the credibility of his testimony in light of his activities of daily living. Macklin argues that "he need not establish that he is bedridden in order to establish he has chronic disabling pain." (Doc. 15 at 17). Macklin cites *Baumgarten v. Chater*, 75 F.3d 366 (8th Cir. 1996), for the proposition that a plaintiff "need not prove that [his] pain precludes all productive activity and confines [him] to life in front of the television." *Id.* at 369 (internal citation omitted). "[The] ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." *Id.* (internal citation and quotation omitted); *see also Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998) (holding that washing dishes, cooking, dusting, sweeping, making beds, vacuuming, doing laundry, caring for pets, visiting with others, watching television, and driving moderate distances were not dispositive of plaintiff's disability claim when they were performed slowly and occasionally due to plaintiff's medical impairments.)

However, Macklin's activities of daily living in this case extend well beyond the "light housework" contemplated in *Baumgartner et al.* The medical evidence of record indicates that despite alleging disabling knee pain from June 2013 onward, Macklin was riding his bicycle in September 2015. (Tr. 740, 744). *See*

14

*Bernard v. Colvin*, 774 F.3d 482, 489 (8th Cir. 2014) (holding that plaintiff's ability to ride his bicycle was inconsistent with allegations of disabling foot cramps). Macklin reported performing "odd jobs" for additional income in September 2014. (Tr. 588). At some time prior to May 2015, the record indicates that Macklin found full-time employment as a maintenance worker. (Tr. 406). "Working generally demonstrates an ability to perform a substantial gainful activity." *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (internal citation omitted.) As a result, I find that the ALJ permissibly evaluated Macklin's testimony in light of the evidence in the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner of Social Security is affirmed.

An appropriate Judgement will be entered on this date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of May, 2018.